UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOESSEAN CRISPIN, : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:20cv1209 (KAD) |
| : | |
| CORRECTIONAL OFFICER HABER, : | |
| et al., : | |
|     Defendants. : | |

## INITIAL REVIEW ORDER

The plaintiff, Joessean Crispin, a sentenced[1] inmate currently confined at Cheshire Correctional Institution ("Cheshire"), brings this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against several Department of Correction ("DOC") employees. [ECF No. 1]. Specifically, he alleges that Correction Officer Haber, Lieutenant Ramos, Lieutenant Bryer, Correction Officers John Doe 1-2, Correction Officer John Doe 3/Ortiz, and Nurse John Doe 4/Kenny violated his rights under the United States Constitution during his confinement at Garner Correctional Institution ("Garner"). He sues all defendants in their individual and official capacities for damages and injunctive and declaratory relief.

For the following reasons, the Court permits the Eighth Amendment claims of deliberate indifference to medical needs to proceed beyond initial review against some, though not all, named defendants in their individual capacities only.

**ALLEGATIONS**

---

[1] The Department of Correction website reflects that Joessean Crispin was sentenced on January 30, 2019. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339978.

1

On February 16, 2020, toward the end of gym recreation, Crispin was injured when his glasses broke while playing basketball at Garner. ECF No. 1 at ¶¶ 1-2, 5. Parts from his broken glasses stabbed him in his left eye and caused him extreme pain. *Id.* at ¶ 2. Due to the pain, Crispin fell to his knees. *Id.*

Both Correction Officers John Doe 1 and 2 provided him with no assistance and failed to call for immediate medical attention. *Id.* at ¶ 3. Crispin attempted to contain his pain and requested help, but no medical assistance was provided for his injury. *Id.* at ¶¶ 4, 6.

He later returned to the Fox Unit and informed Lieutenant Ramos about his medical emergency and need for immediate medical assistance. *Id.* at ¶ 7. Lieutenant Ramos responded that he was sure that one of the correction officers could help. *Id.* at ¶ 8.

Crispin returned to his cell, although he felt off balance. *Id.* at ¶¶ 9-10. While he was in the shower area, he lost his balance and almost fell. *Id.* at ¶ 10. At this point, his pain was increasing and he noticed a puncture wound to his eye near the retina. *Id.* at ¶¶ 11-12. He then returned to the control desk and notified Correction Officers John Does 1 and 2, Correction Officer John Doe 3/Ortiz, and Correction Officer Haber that he was in pain and required immediate treatment for the puncture wound in his eye. *Id.* at ¶¶ 13-14. Correction Officer John Doe 1 responded by stating, "We'll get to it, when we get to it." *Id.* at ¶ 15.

After Crispin continued to state that he had an emergency and to request a nurse, Correction Officer Haber said, "I don't see no emergency. I am not calling medical." *Id.* at ¶¶ 16-17. The correctional officers then just stood silently without calling for assistance, although Crispin continued to plead for assistance during the next five to ten minutes. *Id.* at ¶¶ 18-19.

The correctional officers became belligerent as Crispin continued to request emergency medical assistance, and Correction Officer Haber threatened and swore at him. *Id.* at ¶ 20.

2

Crispin requested that they call the supervisor because he was in extreme pain and had a medical emergency, but they all refused to do so. *Id.* at ¶¶ 21-22. Crispin then turned the garbage can over to spill its contents, righted it, and then turned the unit box of books over. *Id.* at ¶ 23. He told the correction officers that they had left him no choice as he sat on the day room table. *Id.* at ¶ 24. He again expressed that he required immediate medical attention and was in pain. *Id.* at ¶ 24. Correction Officer Haber responded, "I'm not doing shit[;] you can sit your ass up on that table." *Id.* at ¶ 26. Crispin, who felt threatened and insulted, stood with his hands crossed and folded in of his waist and told Haber that he was a "maggot ass mother fucker." *Id.* at ¶ 27. Correction Officer Haber then told him to "come at" him. *Id.* at ¶ 28. Correction Officer Haber and Crispin then exchanged insults, and Crispin also continued to request a call to the medical unit. *Id.* at ¶ 29.

The supervisors, Lieutenants Ramos and Bryer, responded to the scene. *Id.* at ¶ 30. Lieutenant Bryer arrived first and pointed a mace canister towards Crispin's face. *Id.* at ¶¶ 30-31. He informed Crispin that he should put his hands behind his back or he would be maced. *Id.* at ¶ 31. Crispin responded that he just needed medical attention for his severe injury. *Id.* at ¶ 32. After Lieutenant Bryer continued to yell for him to put his hands behind his back, Crispin complied. *Id.* at ¶ 33.

Both Lieutenants Bryer and Ramos and the other correctional officers had Crispin sit at the table; and Lieutenant Bryer asked Crispin about his issue. *Id.* at ¶ 34. Crispin indicated that he was being denied immediate medical attention for his emergency, which the correctional officers could not assess as they are not medical professionals. *Id.* at ¶ 35. He described the accident that had caused him severe pain and informed them that he had a puncture wound in his eye and that his equilibrium was off. *Id.* at ¶ 36. Lieutenant Bryer responded, "What makes you

think I'm gonna change what my correctional officers give you as a response." *Id.* at ¶ 37. Crispin continued to express that he needed medical attention, and Lieutenant Bryer informed him that he would have to wait until the medical unit returned after their break. *Id.* at ¶¶ 38-39.

The lieutenants and correctional officers escorted him back to cell-113, assisted him with his balance, and secured him in his cell. *Id.* at ¶ 40. While in his cell, Crispin remained in extreme pain and noticed blood on his washcloth from his eye. *Id.* at ¶ 41. He then notified John Doe 1 that he needed medical attention for his emergency situation, and he showed John Doe 1 the blood on his washcloth. *Id.*

After twenty minutes, Nurse John Doe/Kenny arrived to assess Crispin. *Id.* at ¶ 42. It was determined that Crispin needed to be sent to the medical unit. *Id.* at ¶ 43. Because he presented a medical emergency, Crispin was later sent to the UConn Medical Center. *Id.* at ¶ 43.

When Crispin returned to Garner from UConn Medical Center, Correction Officer Haber gave him a disciplinary report for interfering with safety and security, and Crispin was placed in segregation. *Id.* at ¶¶ 44, 45, pp 16-24.

Crispin asserts that Correction Officer Haber gave him the disciplinary report to retaliate against him in order "to shift the blame." *Id.* at ¶ 46. Due to the lack of action taken to address his medical emergency, Crispin now has permanent headaches and must take the pain medication of Ibuprofen (800 mg).

Crispin filed a medical remedy on the nurse but was ignored. *Id.* at ¶ 49.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## DISCUSSION

The Court construes Crispin's allegations as asserting Eighth Amendment claims for acting with deliberate indifference to his medical needs.[2] Because Crispin's complaint alleges

---

[2]  Crispin's allegations do not raise a plausible Eighth Amendment claim for malicious use of force because Lieutenant Bryer's threat of using mace was issued for legitimate penological purposes. Crispin's own allegations reflect that he posed a security concern due to his defiant and disruptive behavior. *Vazquez v. Spear*, No. 12-cv-6883 (VB), 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014) (Correction staff's use of a chemical agent on a "recalcitrant inmate" to force compliance with direct orders is not "malicious and sadistic," but rather a good faith effort to restore order.); *see Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (The "core judicial inquiry" is not "whether a certain quantum of injury was sustained but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

that Correction Officer Haber issued him a retaliatory disciplinary report, the Court also construes the complaint as asserting a First Amendment retaliation claim.

**Eighth Amendment**

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." *Id.* at 104 (internal quotation marks and citation omitted). The Court explained that "[t]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-105.

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In order to state a deliberate indifference claim, the plaintiff must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 492 U.S. at 105). Objectively, the alleged deprivation must be "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), that is, "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Factors relevant to assessing the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily

6

activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

When an inmate brings an Eighth Amendment deliberate indifference claim based on "a temporary delay or interruption" of treatment, the court's objective "serious medical need inquiry can take into account the severity of the temporary deprivation alleged by the prisoner." *Smith,* 316 F.3d at 186. The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.*

Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." *Chance***,** 143 F.3d at 703.

Crispin's allegations that he was in severe pain and had experienced an injury requiring medical attention at UConn Medical Center plausibly assert a sufficiently serious medical need so as to implicate the Eighth Amendment. Crispin has also plausibly alleged that Correction Officers John Does 1 and 2, John Doe 3/Ortiz, and Haber, and Lieutenants Bryer and Ramos acted with deliberate indifference to a risk of serious harm to him by failing to call for medical attention despite Crispin's many requests and expressions of pain.

However, Crispin does not plausibly allege that Nurse Doe/Kenny acted with deliberate indifference to Crispin's medical needs. To the contrary, Nurse Doe/Kenny is alleged to have assessed Crispin's injury and thereafter sent him to the medical unit to receive treatment. Crispin alleges that he served a "medical remedy" on "the nurse" that was ignored but this utterly vague allegation fails to raise a plausible inference that Nurse Doe/Kenny acted with deliberate indifference to Crispin's medical needs. Accordingly, the Court permits Crispin's Eighth Amendment claims to proceed beyond initial review against Correction Officers John Does 1 and 2, John Doe 3/Ortiz, and Haber, and Lieutenants Bryer and Ramos only.

**First Amendment Retaliation**

Crispin's complaint indicates that Correction Officer Haber retaliated against him by issuing him a disciplinary report for interfering with safety and security.[3] ECF No. 1. ¶ 46, pp. 16-24.

In order to establish a claim for unlawful retaliation against First Amendment speech, a plaintiff must prove that he engaged in speech activity or other conduct that is protected by the First Amendment and that a governmental defendant took adverse action against the plaintiff because of the plaintiff's protected conduct. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). A plaintiff must prove that he suffered an adverse action that would deter a similarly situated person of ordinary firmness from exercising his or her right to speech. *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012).

---

[3] To the extent Crispin asserts a section 1983 claim on the issuance of an allegedly false disciplinary report, the Court notes that a "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citations omitted).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (internal quotation marks and citations omitted). At least some district courts in this Circuit have assumed that an inmate's request for medical attention falls within First Amendment protection. *See Ruggiero v. Cty. of Orange*, No. 19 CV 3632 (VB), 2020 WL 5096032, at *6 (S.D.N.Y. Aug. 28, 2020) (noting district courts in this Circuit have assumed that requests for medical attention are protected by the First Amendment for purposes of a retaliation claim) (citing *Maxwell v. City of New York*, 108 F. App'x 10, 12 (2d Cir. 2004) (summary order) (agreeing with district court's assumption that "medical attention can be considered a constitutionally protected statement"); *but see Gilmore v. Blair*, No. 918CV463GLSDJS, 2020 WL 5792467, at *8 (N.D.N.Y. June 30, 2020), *report and recommendation adopted*, No. 9:18CV463 (GLS/DJS), 2020 WL 5775203 (N.D.N.Y. Sept. 28, 2020) (noting no clearly established right under the First Amendment for inmates to request medical attention).

"An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Davis*, 320 F.3d at 353). In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often used to determine retaliatory motive may include (1)

9

temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit requires that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotations and citation omitted).

Here, Crispin has not specified the protected conduct that allegedly gave rise to Correction Officer Haber's retaliatory issuance of the disciplinary report. However, the Court construes his complaint as asserting that Correction Officer Haber issued the disciplinary report due to Crispin's requests for medical attention. Assuming without deciding that his requests can be considered protected conduct, he must, but has not, alleged any facts indicating that his protected conduct was a substantial or motivating factor in the alleged adverse action. *Moore*, 92 F. Supp. 3d at 121. Crispin alleges a conclusory assertion that Correction Officer Haber acted maliciously to retaliate against him to "shift the blame." ECF No. 1 at ¶ 46. And in view of Crispin's allegations that he intentionally spilled the trash and books, which then required Lieutenant Bryer and Ramos to enforce his compliance with correctional staff orders by threatening the use of mace, the Court cannot conclude that a causal connection exists between Correction Officer Haber's issuance of the disciplinary report and Crispin's request for medical

attention as retaliatory. Rather the allegations reveal that Correction Officer Haber issued the disciplinary report based on legitimate penological safety and security concerns. Because Crispin has not alleged a plausible First Amendment retaliation claim, this claim is dismissed.

**Official Capacity Claims**

Crispin seeks both injunctive and declaratory relief against the defendants in their official capacities.

Crispin may only proceed against a DOC official in his or her official capacity to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). However, the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Accordingly, to the extent Crispin seeks a declaration that the defendants violated his constitutional rights in the past, such claims are dismissed.

Injunctive relief afforded by a court must be narrowly tailored or proportional to the scope of the violation and extending no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). Crispin requests the court to order the defendants to act

"accordingly whenever [he] makes a report of a medical emergency" and not to remove him from his pain medication. ECF No. 1 at p. 12 at ¶ 1. Crispin's Eighth Amendment claim does not present an ongoing violation of his rights but is based on the correctional staff's past conduct. Indeed, Crispin is no longer at Garner, rendering moot his request for prospective injunctive relief against the defendants. "A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility. *Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir. 2002). Accordingly, all claims against the defendants in their official capacities are dismissed with prejudice.

**ORDERS**

The Court enters the following orders:

(1) This case may proceed on Crispin's Eighth Amendment claims based on deliberate indifference to his medical needs against Correction Officers John Does 1 and 2, John Doe 3/Ortiz, and Correction Officer Haber, and Lieutenants Bryer and Ramos in their individual capacities for damages. All official capacity claims are DISMISSED with prejudice. All other claims are DISMISSED without prejudice to filing an amended complaint by **November 19, 2020**, to correct the pleading deficiencies identified in this Initial Review Order.

(2) The clerk shall verify the current work address of Correction Officer Haber, Lieutenant Ramos, and Lieutenant Bryer (who are alleged to work at Garner Correctional Institution) with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by **November 9, 2020**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant

shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d). The Clerk shall send a courtesy copy of this Order and the Complaint to the Office of the Attorney General – Attn: AAG Madeline Melchionne and AAG Terrence O'Neill.

(3) The Clerk cannot effectuate service on a Doe defendant without that defendant's full name and current work address. The plaintiff is directed to obtain this information during discovery and to file a notice containing the information with the court. **Once a defendant Doe has been identified, the court will order that he or she be served with a copy of the complaint. Failure to identify a Doe defendant within 90 days shall result in the dismissal of all claims against that defendant.** The Court further notes that it is unclear whether Correction Officer John Doe 3 is named Correction Officer Ortiz, or whether Crispin remains unsure of his identity. Accordingly, Crispin is instructed to file a notice to notify the court of the identities of Correction Officers John Doe 1, 2 **and 3**.

(4) The defendants shall file the response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If the defendants choose to file an answer, the defendants shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **April 19, 2021**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **May 19, 2021**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on the defendants' counsel by regular mail.

**SO ORDERED** this 19th day of October 2020, at Bridgeport, Connecticut.

_/s/_____
Kari A. Dooley
United States District Judge