**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOSSEAN CRISPIN, | ) | 3:20-cv-01209 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORRECTIONAL OFFICER HABER, | ) | DECEMBER 12, 2022 |
| et al., | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OF DECISION**
**RE: MOTION FOR SUMMARY JUDGMENT, ECF NO. 81**

Kari A. Dooley, United States District Judge:

The Plaintiff, Jossean Crispin, brought this civil rights action pursuant to 42 U.S.C. § 1983

against several Department of Correction ("DOC") employees, alleging violations of his rights

under the United States Constitution that occurred while he was a sentenced inmate at Garner

Correctional Institution ("Garner"). Compl. 1–2, ECF No. 1. After initial review, the Court

permitted Plaintiff to proceed on his Eighth Amendment claims alleging deliberate indifference to

his medical needs against Correctional Officers John Does 1 and 2, Correctional Officer John Doe

3/Ortiz, Correctional Officer Haber, and Lieutenants Bryer and Ramos in their individual

capacities for damages. Initial Review Order 8, 12, ECF No. 14.[1] The Court subsequently

dismissed Plaintiff's claims against the John Does 1, 2, and 3 because Plaintiff failed to identify

those defendants as directed in the Initial Review Order. Order, ECF No. 63.

On March 14, 2022, Defendants filed a motion for summary judgment on the merits of

Plaintiff's Eighth Amendment deliberate indifference claims. Mot. Summ. J., ECF No. 81. Under

District of Connecticut Local Rule 7(a)(2), Plaintiff's opposition to the motion for summary

judgment was due on April 4, 2022. On June 29, 2022, the Court issued an order granting

---

[1] The Court dismissed Plaintiff's First Amendment retaliation claim against Correctional Officer Haber and Plaintiff's Eighth Amendment claim against Defendant Nurse Kenny. *Id.* at 8, 10–11.

Plaintiff's motion for extension of time and instructed him to "respond to the motion for summary

judgment by August 5, 2022." Order, ECF No. 94. To date, Plaintiff has not filed any response or

opposition to Defendants' motion for summary judgment. Nor has he requested another extension

of time to do so.

For the reasons that follow, Defendants' Motion for Summary Judgment, ECF No. 81, is

GRANTED.

**FACTS[2]**

**Plaintiff's complaint alleges the following facts:**

On February 16, 2020, toward the end of the gym recreation period at Garner, Plaintiff was

injured when his glasses broke while he was playing basketball. Compl. ¶¶ 1–2, 5. Parts from his

broken glasses stabbed him in his left eye and caused him extreme pain. *Id.* ¶ 2. Plaintiff alleges

that he huddled on the floor and then "tried to get moving" in an attempt to contain his pain and

that he requested help, but no medical assistance was provided for his injury before he left the

gym. *Id.* ¶¶ 4, 6.

Plaintiff alleges that when he reached the housing unit, he walked to the unit control desk,

or "bubble," and informed Lieutenant Ramos about his "medical emergency" and his need for

---

[2] The facts are taken from Defendants' Local Rule 56(a)1 Statement, ECF No. 81-2. Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." In their Notice to Self-Represented Litigant, ECF No. 81-5, Defendants informed Plaintiff of the requirement to file a Local Rule 56(a)2 Statement, and Plaintiff has failed to do so. Because Plaintiff has not filed a response to Defendants' statement of facts in compliance with Local Rule 56(a)2, Defendants' Rule 56(a)1 statement of facts may be deemed admitted where supported by the evidence.

Notwithstanding, the Court's review of the facts also includes consideration of the allegations in Plaintiff's Verified Amended Complaint. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e).").

"immediate medical treatment." *Id.* ¶¶ 7–8. Lieutenant Ramos allegedly informed him that the correctional officers could help. *Id.* ¶ 8. Plaintiff claims that he proceeded back to his cell "walking awkwardly" because his "balance was off" and later almost fell in the shower. *Id.* ¶¶ 9–10. He claims that his pain was increasing and that his eye was discolored and had a puncture wound near the retina. *Id.* ¶¶ 11–12. He alleges that he returned to the bubble and notified correctional staff, including Defendant Correctional Officer Haber, that he was in "severe pain" and required "immediate emergency treatment because something was seriously wrong with [his] left eye" that had been punctured. *Id.* ¶¶ 13–14.

Plaintiff claims that Correctional Officer Haber said, "I don't see no emergency. I am not calling medical," and that correctional staff failed to call for medical assistance, although Plaintiff pleaded for what he believed to be five-to-ten minutes for medical staff to be called. *Id*. ¶¶ 16–19. He maintains that Correctional Officer Haber threatened and swore at him, and that correctional staff refused his request for a call to the supervisor. *Id.* ¶¶ 20–22.

Thereafter, Plaintiff alleges that due to his mental and physical "duress," he turned the garbage can over to spill its contents, righted it, and then turned over the unit box of books. *Id.* ¶ 23. He claims that he informed the correctional officers that they had left him no choice as he sat on the day room table and expressed his need for medical attention. *Id.* ¶ 24. Correctional Officer Haber allegedly responded, "I'm not doing shit, you can sit your ass up on that table." *Id.* ¶ 26. Correctional Officer Haber and Plaintiff allegedly continued to exchange insults, while Plaintiff also continued to ask for the medical unit be called. *Id.* ¶¶ 27–29.

Plaintiff claims that Lieutenant Bryer arrived at the scene, pointed a mace canister towards Plaintiff's face, and informed him that he should put his hands behind his back or he would be maced. *Id.* ¶¶ 30–31. Plaintiff alleges that he responded that he needed medical attention for his

severe injury and later complied after Lieutenant Bryer continued to yell for him to put his hands behind his back. *Id.* ¶¶ 32–33.

Plaintiff asserts that he described his denial of medical treatment for his eye injury that was affecting his equilibrium to Lieutenants Bryer and Ramos, who made him sit at the table. *Id.* ¶¶ 34–39. He claims that Lieutenant Bryer informed him that he would have to wait until the medical unit returned after their break. *Id.* ¶¶ 38–39. Plaintiff alleges that the lieutenants and correctional officers escorted him back to his cell, assisted him with his balance, and secured him in his cell, where he waited for an hour and a half for medical staff while he remained in extreme pain and noticed blood coming from his eye on a washcloth. *Id.* ¶¶ 40–41.

Plaintiff alleges that after he was finally assessed by a nurse, he was sent to the DOC medical unit and then to the UConn Medical Center at Farmington. *Id.* ¶¶ 42–43. He claims that when he returned to Garner from UConn Medical Center, Correctional Officer Haber gave him a disciplinary report for interfering with safety and security placed him in segregation. *Id.* ¶¶ 44–45. Plaintiff claims that he now has permanent headaches and must take the pain medication of Ibuprofen (800 mg) due to the lack of action taken to address his medical emergency. *Id.* ¶ 48.

In support of the motion for summary judgment, the defendants submitted video footage of the events in question. Based upon the video evidence, and the Defendants' Rule 56(a)(1) statement of facts, the Court finds the following relevant facts to be conclusively established[3]

On February 16, 2020, at approximately 5:00 PM, Plaintiff was escorted to the gym for a period of recreation. Defs.' Local Rule 56(a) Statement ("Defs.' L.R.") ¶ 5, ECF No. 81-2. Correctional Officer Haber, who was one of the officers who escorted the inmates to the gym, took a position on the side of the gym during the recreation period. *Id.* ¶ 6. Approximately fifty-five

---

[3] Where the parties present conflicting versions of an incident and video evidence of the incident has been submitted on a motion for summary judgment, the court must view the facts "in the light depicted" by the video of the incident. *See Scott v. Harris,* 550 U.S. 372, 380–81 (2007).

minutes later, Plaintiff collided with another inmate while playing basketball. *Id.* ¶ 7. After the collision, Plaintiff held his face in his hands and spun around as he staggered off the court. *Id.* ¶ 8; *see* Mot. Summ. J. Ex. A, at 1:09:59–1:10:04.

Correctional Officer Haber avers that he did not personally witness the collision between Plaintiff and the other inmate. Mot. Summ. J. Ex. F ("Haber Decl.") ¶ 8. Approximately three minutes after his collision, Plaintiff returned to the basketball court and played basketball for a brief period (less than two minutes). Defs.' L.R. ¶¶ 9, 11; Mot. Summ. J. Ex. A, at 1:12:12–1:13:33. Approximately five minutes after Plaintiff stopped playing basketball, the correctional staff commenced the process of escorting the inmates back to their housing unit. Defs.' L.R. ¶ 12.

Officer Haber avers that Plaintiff did not approach him to report the incident or claim injury during the time between his collision and the end of his recreation period, and that he did not notice any bleeding from Plaintiff's eyes or any other obvious signs of injury. Haber Decl. ¶ 10.[4]

After being handcuffed, Plaintiff gathered with other inmates to leave the gym and was escorted back to his housing unit. Defs.' L.R. ¶¶ 15–16. Officer Haber avers that he did not witness Plaintiff walking in an awkward manner or exhibiting signs of distress, pain, or incapacity. Haber Decl. ¶ 12.[5]

Plaintiff returned to his housing unit at approximately 6:00 PM. Defs.' L.R. ¶ 18. After entering the housing unit, Plaintiff went to the bubble and informed the officers about the eye

---

[4] The Court cannot determine from the video evidence alone whether Plaintiff failed to notify any correctional officer present about his injury or whether Plaintiff's conduct clearly indicated that he was in pain because the video shows only Plaintiff's conduct while he is on the basketball court, and Plaintiff's conduct after he has left the basketball court is not visible. *See* Mot. Summ. J. Ex. A, at 1:09:59–1:18:01.

[5] Defendants rely upon the prison surveillance footage of the prisoner escort, submitted as Exhibit B to Defendants' motion for summary judgment, to establish as an undisputed fact that Plaintiff did not wobble or lose his balance during his escort to his housing unit. *See* Defs.' L.R. ¶¶ 15–16. This footage shows the backs of the inmates walking down the corridor. *See* Mot. Summ. J. Ex. B, at 1:20:00–1:20:12. An inmate who appears to be Crispin sways back and forth slightly more than the other inmates as he walks down the corridor. Due to the limited view provided by the surveillance footage, the Court cannot conclude that Plaintiff walked without any impairment as an undisputed fact. *See id.* at 1:20:07.

injury he incurred during the recreational period. *Id.* ¶ 19; *see* Haber Decl. ¶ 13. Officer Haber

avers that this was the first time he learned that Plaintiff claimed an injury, and that he did not

notice any bleeding from Plaintiff's eye or obvious signs of injury while Plaintiff was at the bubble.

Haber Decl. ¶¶ 15–16. Officer Haber avers further that because the medical staff would arrive at

the unit for "med-pass" by 7:00 or 7:30 PM, Plaintiff was asked to wait until that time to present

his complaint about his injury to medical staff. *Id.* ¶¶ 17–18.[6] Shortly thereafter, Plaintiff left the

bubble. Defs.' L.R. ¶ 24.

Approximately ten minutes later, Plaintiff returned to the bubble to complain about issues

concerning his eye and was verbally abusive towards Officer Haber. *Id.* ¶ 26; Haber Decl. ¶¶ 20–

21.[7] Plaintiff sat on a table for few minutes and then went over to the garbage cans in the area and

dumped their contents onto the floor. Defs.' L.R. ¶ 28. Additional correctional officers and

supervisors were called to the unit and arrived shortly after Plaintiff did so. *Id.* ¶ 29. Lieutenant

Ramos avers that he observed Plaintiff sitting on the table in a clearly agitated state and that

Plaintiff was complaining that he had a medical emergency. Mot. Summ. J. Ex. G ("Ramos Decl.")

¶ 7. Ramos avers that he could not see Plaintiff bleeding or any other obvious signs of pain or

injury. *Id.* ¶¶ 7–8. After the officers handcuffed him, Plaintiff sat down at the table in the common

area. Defs.' L.R. ¶ 33. Plaintiff became compliant and was then escorted to his cell.[8] *Id.* at ¶ 34.

---

[6] Defendants maintain that their Exhibit C, surveillance video footage of Plaintiff at the bubble, establishes as an undisputed fact that Plaintiff did not appear to be in any pain or distress. *See* Defs.' L.R. ¶ 25. Notably, the surveillance footage contains no sound, and the Court cannot discern whether Plaintiff's voice conveyed pain and distress. Thus, the Court cannot conclude from only the limited view provided by the surveillance footage whether Plaintiff exhibited any signs of distress or appeared to the correctional staff to be an individual without pain or distress. *See* Mot. Summ. J. Ex. C, at 1:21:32–1:22:21.

[7] Officer Haber avers that he maintained a calm manner while Plaintiff continued his verbal abuse. Haber Decl. ¶ 23.

[8] Defendants maintain that the Exhibit C surveillance video footage establishes that Plaintiff walked under his own power without assistance. *See* Defs.' L.R. ¶ 34. But the video footage shows Plaintiff being escorted with two officers on both of his sides who may have been assisting with his balance and ability to walk. *See* Mot. Summ. J. Ex. C, at 1:43:10–1:43:50. Thus, the Court cannot determine from this evidence that Plaintiff was not assisted in any way by the officers during his escort to his cell.

Approximately one hour later, medical staff arrived at Plaintiff's housing unit to assess Plaintiff. Defs. L.R. ¶ 38. Once Lieutenant Ramos arrived at the housing unit, Plaintiff was removed from his cell for assessment by the medical staff. *Id.* ¶ 39. Medical staff assessed Plaintiff and requested that Plaintiff be escorted to the medical facility for further review. *Id.* ¶ 40.

At approximately 7:30 PM, Plaintiff was escorted to the medical facility with two correctional officers holding him on each side without incident. *Id.* ¶¶ 41, 43.[9] Lieutenant Ramos avers that he did not notice Plaintiff lose his balance or wobble and assessed that Plaintiff was walking under his own power during the escort. Ramos Decl. ¶ 18. A short time later, at approximately 8:05 PM, Plaintiff was examined by medical staff at the medical facility. Defs.' L.R. ¶ 44. Plaintiff was later sent by facility transport to UConn John Dempsey Hospital where he was evaluated by UConn Health Emergency Room staff. *Id.* ¶¶ 45, 47–48.

In video footage taken with a handheld camera of Plaintiff pre-transport, Plaintiff converses with the officers and does not exhibit signs of extreme pain stemming from his eye injury.[10] *See* Mot. Summ. J. Ex. E, at 05:57–12:30. Lieutenant Ramos avers that he did not notice Plaintiff exhibit any signs of pain or injury while awaiting transport. Ramos Decl. ¶ 22.

At the hospital, Plaintiff received a "point-of-care ultrasound" and "tetracaine," which "completely resolved" his pain, was diagnosed with a "large corneal abrasion of left eye," and was prescribed erythromycin. Mot. Summ. J. Ex. I, at 2; Mot. Summ. J. Ex. J, at 9, 16–17. Plaintiff

---

[9] Defendants represent that the surveillance video submitted as Exhibit D shows that Plaintiff walked without assistance and did not exhibit any distress or pain during his escort to the medical facility. *Id.* ¶ 41. Again, the video lacks any sound, and it shows that Plaintiff is being held by two officers on each of his sides as he walks. Mot. Summ. J. Ex. D, at 1:38:57–1:39:16. Accordingly, this video evidence does not establish as an undisputed fact that Plaintiff was walking without any assistance from the two officers.

[10] Defendants rely upon the pre-transport handheld video footage to support their claim that Plaintiff did not appear to be in any pain or distress while he waited for his transport. *See* Defs.' L.R. ¶ 46. In the video, Plaintiff's left eye appears bruised and swollen, and he makes facial expressions at certain times that could signify discomfort or pain when he stands up from a seated position or is placed in restraints. *See, e.g.*, Mot. Summ. J. Ex. E, at 04:45, 08:30, 16:13–16:20. However, the Court agrees that Plaintiff did not manifest signs of extreme pain in connection with his eye throughout the video.

later received follow-up care by DOC medical staff on February 19, 2020. Defs.' L.R. ¶¶ 49–50.

The medical notes for Plaintiff's follow-up on February 19, 2022 indicate that he had mild corneal

irritation in his left eye. Mot. Summ. J. Ex. I, at 13. Plaintiff's medical records also show that

Plaintiff had been prescribed 800 mg of Ibuprofen to take as needed since August 27, 2019—well

before the incident on February 16, 2020. *Id.* at 19.

**STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there is no genuine dispute

as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins.

Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at

248. "The same standard applies whether summary judgment is granted on the merits or on an

affirmative defense . . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion

and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets

this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue

for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory

allegations or unsubstantiated speculation," but "must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health

Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks omitted). To defeat a motion for summary

judgment, the nonmoving party must present such evidence as would allow a jury to find in his

favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented party's papers "liberally" and "interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quotation marks omitted), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## DISCUSSION

Defendants argue that Plaintiff cannot, as a matter of law, establish his Eighth Amendment medical indifference claims because he never exhibited any sign that emergency treatment was required, and that the temporary delay in treatment did not create any adverse medical consequences. Defs.' Mem. in Supp. 6–13, ECF No. 81-1. The Court agrees with this latter argument and does not therefore reach the former.

In *Estelle v. Gamble*, the United States Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted). The Court explained that "[t]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–105. Deliberate indifference to serious medical needs occurs when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). In order to state a deliberate indifference claim, the plaintiff must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

"In cases where a prisoner alleges a delay in medical treatment, courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay." *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). For an Eighth Amendment deliberate indifference claim based on "a temporary delay or interruption" of treatment, the court's objective "serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith*, 316 F.3d at 186. The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* at 187; *see also Bilal v. White*, 494 F. App'x 143, 145–46 (2d Cir. 2012) ("Even assuming that [Inmate]'s conditions could produce serious complications if neglected over sufficient time, there is no evidence that [Inmate]'s conditions worsened over the hours of delay here." (internal citations omitted)).

Courts within the Second Circuit have found that treatment delays satisfy the objective seriousness requirement under circumstances involving a needlessly prolonged delay, or where officials deliberately delayed the treatment as a form of punishment or ignored a life-threatening and fast-degenerating condition. *See Brockett v. Lupis*, No. 3:21-CV-355 (KAD), 2022 WL 1658835, at *8 (D. Conn. May 25, 2022); *Feliciano v. Anderson*, No. 15-CV-4106 (LTS) (JLC), 2017 WL 1189747, at *11 (S.D.N.Y. Mar. 30, 2017) ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three

10

days; or delayed major surgery for over two years." (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999)).

Further, subjectively, the defendant must have been aware of a substantial risk that the inmate would suffer serious harm because of his or her actions or inactions. *See Salahuddin,* 467 F.3d at 280; *Amaker v. Coombe,* No. 96 CIV. 1622 (JGK), 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) ("A delay in medical treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment."). A "delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Thomas v. Nassau Cnty. Corr. Ctr.*, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

Here, it is undisputed that Plaintiff sustained his injury just before 6:00 PM, *see* Defs.' L.R. ¶¶ 5, 7, and that he received a medical evaluation by DOC medical staff and was escorted to the medical unit an hour and half later, by 7:30 PM, *see* Mot. Summ. J. Ex. H, at 6. He was further assessed by medical staff at approximately 8:05 PM and sent to the hospital facility for further evaluation. Mot. Summ. J. Ex. I, at 15–18. After he was transported to the hospital, Plaintiff received medical attention from emergency room hospital staff, including a "point-of-care ultrasound" and "tetracaine," which "completely resolved" his pain, and a prescription for erythromycin to treat his diagnosed left eye corneal tear. *See* Mot. Summ. J. Ex. I, at 2; Mot. Summ. J. Ex. J, at 3–9.

Plaintiff alleges that he must take 800 mg Ibuprofen for headaches as a result of Defendants' inaction. Compl. ¶ 48. The record shows, however, that Plaintiff had been prescribed 800 mg Ibuprofen to be taken as needed since August 27, 2019. Defs.' L.R. ¶ 51.

Other than his assertion of suffering pain while he waited for medical, *see* Compl. ¶¶ 11–14, 40–41, Plaintiff has adduced no evidence that any of his underlying conditions worsened due to the short delay between his injury at approximately 6:00 PM and his receipt of medical treatment at 7:30 PM. And although Plaintiff may have experienced pain resulting from his injury while he waited for medical treatment, no evidence suggests that the delay exacerbated his pain or injury. As such, the brief delay in Plaintiff's medical treatment after his injury is insufficient to support an Eighth Amendment violation. *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y.2001) ("[A]s any lay person is well accustomed, patients are frequently faced with delays in receiving medical care, particularly when . . . their medical condition is not grave." (quotation marks omitted)). *See also Martin v. City of N.Y.*, No. 11-CV-4507 (ARR), 2016 WL 11431027, at *5 (E.D.N.Y. Mar. 7, 2016) (granting summary judgment where record failed to suggest that "modest delays [of less than two hours] in treatment in any way exacerbated plaintiff's injury or caused him any harm except for the discomfort and some degree of pain he experienced while waiting to receive treatment"); *White v. Rock*, No. 9:13-CV-392 (GTS/CFH), 2016 WL 11478222, at *10 (N.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, No. 9:13-CV-392 (GTS/CFH), 2016 WL 1248904 (N.D.N.Y. Mar. 29, 2016) (granting summary judgment where the plaintiff claimed that he was in pain during a one-day delay but failed to produce any evidence that the short delay caused him to suffer "substantial harm" or was imposed as an effort to punish him); *Evans v. Manos*, 336 F. Supp. 2d 255, 260, 262 (W.D.N.Y. 2004) (holding that subjective claims of pain, unaccompanied by substantial medical complications, are not sufficient to create a factual issue that the plaintiff was suffering from a "serious" and unmet medical need, as "delay alone will not give rise to a constitutional claim unless the delay causes substantial harm").[11]

---

[11] The record also fails to evince any inference of fact that any defendant delayed Plaintiff's medical care as a form

As the record fails to suggest that Plaintiff incurred any substantial harm as a result of the delay in his medical treatment, no reasonable factfinder could conclude that Plaintiff sustained a sufficiently serious medical deprivation to support an Eighth Amendment violation. *See Brockett*, 2022 WL 1658835, at *8 ("As Brockett has presented no evidence showing that the delay in reissuing the pass exacerbated his injuries or caused any harm other than possible discomfort or pain, he has not demonstrated a genuine issue of material fact regarding the objective element of the deliberate indifference standard."); *Palacio v. Ocasio*, No. 02CIV.6726(PAC)(JCF), 2006 WL 2372250, at *11 (S.D.N.Y. Aug. 11, 2006) (granting the defendants' motion for summary judgment where the delay in treatment was, at most, a little more than two hours and nothing in the record suggested that the plaintiff "suffered from a life-threatening or fast-degenerating condition or that prison officials deliberately delayed his treatment as a form of punishment"); *Rodriguez v. Mercado*, No. 00 CV 8588 (JSR/FM), 2002 WL 1997885, at *9 (S.D.N.Y. Aug. 28, 2002) (noting that most patients "seeking care for a non-life-threatening injury generally experience[] some delay in receiving treatment" and finding no constitutional claim based on a delay of eight or nine hours where the plaintiff had not alleged life-threatening or fast-degenerating conditions or extreme pain that "more rapid treatment would have alleviated"); *see also Benjamin v. Pillai*, 794 F. App'x 8, 12 (2d Cir. 2019) (summary order) ("Here, the record shows that any delay in receiving the Naproxen was insignificant because the Naproxen could not alleviate [the plaintiff's] pain.").

## CONCLUSION

Accordingly, Defendants' motion for summary judgment [81] is GRANTED.

The Clerk of the Court is instructed to enter judgment in favor of Defendants and to close this case.

---

of punishment. Indeed, Plaintiff makes no such claim.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of December 2022.

       */s/ Kari A. Dooley*
       KARI A. DOOLEY
       UNITED STATES DISTRICT JUDGE